## STAUNTON INDUSTRIAL LOAN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101322.    Promulgated October 22, 1940.

*C. G. Quesenbery, Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

**OPINION.**

DISNEY: In his determination of the deficiencies the Commissioner held that the petitioner was not a bank within the meaning of section 104 of the Revenue Act of 1936 and accordingly applied the surtax provisions of the statute to the undistributed net income of the petitioner each taxable year. The question is whether petitioner comes within the definition of a bank in section 104, *supra.*

Section 104 (b) of the applicable revenue act provides for the taxation of banks in the same manner as other corporations, except that they shall not be subject to the surtax imposed by section 14 and the rate of normal tax shall be 15 per centum instead of the rates provided in section 13. Section 104 (a) provides:

As used in this section the term "bank" means a bank or trust company incorporated and doing business under the laws of the United States (including laws relating to the District of Columbia), of any State, or of any Territory, a substantial part of the business of which consists of receiving deposits and making loans and discounts, or of exercising fiduciary powers similar to those permitted to national banks under section 11 (k) of the Federal Reserve Act, as amended, and which is subject by law to supervision and examination by State or Federal authority having supervision over banking institutions.

The petitioner contends that the term "bank" was used in section 104 by Congress in its commonly accepted sense and is not confined to banks organized under the banking laws of Virginia. It makes no contention that it is a trust company and the proof is clear that it did not exercise fiduciary powers. Respondent contends that petitioner was neither formed nor doing business as a "bank" under the laws of Virginia and therefore does not meet the test set forth in the revenue act. The contention of petitioner will be considered first.

The term "bank" as used in section 104 means "a bank * * * incorporated and doing business under the laws of * * * any State." Sec. 104 (a), *supra.* The section is an exemption from the surtax provisions applicable to corporations in general and should be strictly construed. It does not apply to all banks so organized, but only to those a substantial part of the business of which consists

of receiving deposits and making loans and discounts. Petitioner's power to receive money from customers was limited to the proceeds of sale of certificates of investment or similar obligations. Its charter contains no right to accept deposits, subject to checks or otherwise, as banks are authorized to do. That is one of the chief distinctions between petitioner and a bank.

To support his argument, petitioner refers to reports of committees of Congress. In its report on the Revenue Act of 1936, the Committee on Ways and Means said:

Banks and trust companies are not brought within the new plan, but pay a flat rate of tax of 15 percent on their net income and domestic corporations in receivership are treated in the same manner. This seems to be a wise public policy, since the surplus of banks must be built up for the protection of the depositors and because receiverships in the vast majority of cases cannot, of course, pay dividends. For similar reasons there is a flat tax of 15 percent on the net income of all insurance companies whether domestic or foreign.

The report of the Committee on Finance, Report No. 2156, p. 13, contains no additional light on the intent of the section. These reports merely disclose the reason for the exemption and contain nothing to show that the committees intended the term "bank" to embrace more than the definition in the statute. We conclude that to be entitled to the benefits of section 104 petitioner must show that it was organized and doing business as a bank under the laws of Virginia. Was it such an institution during the taxable years?

State banks of Virginia are defined in and regulated by the provisions of chapter 164–A of the Virginia Code of 1936, known as the Banking Code. Virginia corporations organized to conduct an industrial loan business are regulated by the provisions of chapter 166–A, relating to industrial loan associations. The statutes of Virginia make a clear distinction between the two classes of corporations. The term "bank", as used in chapter 164–A, includes "banks of deposit and discount, savings banks, savings societies, savings institutions and trust companies." Sec 4149 (1). Corporations not lawfully engaged in the banking business may not use an office sign indicating thereon that such place is the office of a bank or use, among other things, letterheads having thereon any word indicating that such business is the business of a bank. Sec. 4149 (4). No bank may acquire shares of its own stock except as a protection against loss from debts previously contracted. Sec. 4149 (13). No bank may pay interest on deposits or certificates of deposits in excess of 4 percent per annum. Sec. 4149 (25). The total liability of any person to a bank shall at no time exceed 15 per centum of the capital and permanent surplus of the bank. Sec. 4149 (47). Section 4149 (73), enacted in 1928, provides that "No bank shall hereafter be

granted in its charter, or in any amendments thereto, authority to do business as an industrial loan association. No industrial loan association shall hereafter be granted authority in its charter, or in any amendment thereto, to do a banking business, and no such association shall, except as hereinafter provided, hereafter be granted in its charter, or in any amendment thereto, the right to have in its title the word 'bank,' 'banking,' 'savings' or 'trust' or any words tending to indicate that it is permitted to do a banking business in Virginia."

Chapter 166–A provides that corporations for conducting an industrial loan business may be formed under chapter 147 of the Code of Virginia and shall be subject to all the restrictions and shall have all the general powers set forth in that chapter, except as otherwise provided in chapter 166–A. The statute then provides that every association shall have as part of its title the words "industrial loan which shall not be used disjunctively." Sec. 4168 (2). Industrial loan associations may loan money, repayable in periodical installments secured by the obligation of the borrower or other security, but no loan shall be for a longer period than ten years or at an amount exceeding 20 percent of the paid-in capital stock and surplus of the association. Sec. 4168 (5). They may charge in advance the legal rate of interest upon the entire amount of the loan (Sec. 4168 (6)) and impose fines not in excess of a specified amount for failure of the borrower to pay any installment of the loan. Sec. 4168 (7). Power is granted in section 4168 (8) to sell certificates of investment or similar obligations upon either the fully paid or partial payment plan and pay interest thereon at rates provided for in their certificates of incorporation or bylaws. Section 4168 (10) gives the State Corporation Commission supervision of all industrial loan associations, with directions to examine their affairs at least once a year. The same commission exercises like jurisdiction over banks. Sec. 4149 (52). Section 4168 (11½) (e), enacted in 1936, provides that any industrial loan association theretofore chartered with power to operate a bank of discount and deposit which actually does business only as an industrial loan association shall not be subject to section 4149 (25), the provisions of which regulate the maximum amount of interest payable on bank deposits.

It appears from the statutes just referred to that industrial loan associations organized and doing business thereunder have nothing more than some of the characteristics of a bank, as defined therein. The statutes not only provide for the formation of the institutions under different chapters of the Banking Code, but specifically provide that an industrial loan association shall not do business or hold itself out as doing business as a bank. The powers of banks and corporations doing an industrial loan business differ in respect to

loans and interest payments. No bank may make a loan in excess of 15 percent of its capital and permanent surplus, but an industrial loan corporation may make a loan up to 20 percent of its capital and surplus. Interest paid by banks is regulated by statute. Petitioner had power to determine its own rate of interest. Petitioner's charter authorized it to impose fines upon borrowers for defaults on any installment of a loan. State banks of Virginia do not seem to have such power. The charter of petitioner also empowered it to buy and sell, and exercise the rights and privileges of owners of, securities of other corporations. The powers of state banks in that respect are limited. Sec. 4149 (13). The distinction was definitely recognized by the General Assembly of Virginia in 1934. It declared that "The objects of an industrial loan association and a bank are hereby declared to be similar in nature" and authorized industrial loan associations chartered prior to January 1, 1934, to amend their charters to become "a bank of discount and deposit and/or a trust company" and retain the right to conduct the business of an industrial loan association. Sec. 4168 (37) (c). Petitioner never took advantage of the privilege granted by the act. The act was repealed in 1936. The petitioner was not incorporated and doing business as a bank under the laws of Virginia.

From the conclusions reached it follows that the respondent committed no error in refusing to classify petitioner as a bank within the meaning of section 104 of the Revenue Act of 1936.

Reviewed by the Board.

*Decision will be entered for the respondent.*